UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :
In re:                                                         :   **ORAL ARGUMENT**
                                                               :   **REQUESTED**
                                                               :
DELTA AIR LINES, INC., et al.,                                 :   Chapter 11
                                                               :   Case No. 05-17923 (ASH)
                    Debtors.                                   :   (Jointly Administered)
                                                               :
---------------------------------------------------------------x
BELL ATLANTIC TRICON LEASING                                   :
CORPORATION, NCC GOLF COMPANY, NCC                             :
KEY COMPANY and NCC CHARLIE                                    :   08 Civ. 2449 (RMB)
COMPANY,                                                       :
                                                               :
                    Appellants,                                :
                                                               :
     - against -                                               :
                                                               :
DELTA AIR LINES, INC., et al.,                                 :
                                                               :
                    Appellees.                                 :
---------------------------------------------------------------x

## **APPELLANTS' REPLY BRIEF**

      HUNTON & WILLIAMS LLP
      Peter S. Partee
      Scott H. Bernstein
      200 Park Avenue, 53rd Floor
      New York, New York 10166-0136
      (212) 309-1000 (telephone)

      -and-

      Benjamin C. Ackerly
      Jason W. Harbour
      Riverfront Plaza, East Tower
      951 East Byrd Street
      Richmond, Virginia 23219-4074
      (804) 788-8200 (telephone)

      *Attorneys for Bell Atlantic Tricon Leasing*
      *Corporation, NCC Golf Company, NCC Key Company*
      *and NCC Charlie Company*

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. DELTA SEEKS TO NULLIFY THE TIAS .................................................................1

III. EXTRINSIC EVIDENCE WAS IMPROPERLY EXCLUDED .......................................2

IV. DELTA'S COSMIC ARGUMENT FAILS ..................................................................4

V. DELTA'S ARGUMENT VIOLATES *TRAVELERS* ...................................................6

VI. THE OPERATIVE DOCUMENTS REQUIRE PAYMENT IN CASH IN FULL.............6

VII. DELTA'S OFFSET ARGUMENT FAILS ..................................................................8

VIII. DELTA'S EXAMPLES DEMONSTRATE WHY DELTA IS WRONG ..........................9

IX. CONCLUSION......................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

### **FEDERAL CASES**

*Alexander & Alexander Servcs., Inc. v. Lloyd's*, 136 F.3d 82 (2d Cir. 1998)..................3

*In re Chateaugay Corp.*, 116 B.R. 887 (Bankr. S.D.N.Y. 1990)......................................3

*In re Delta Air Lines, Inc.*, 370 B.R. 552 (Bankr. S.D.N.Y. 2007) (No. 9)................4, 5

*In re Delta Air Lines, Inc.*, 381 B.R. 57 (Bankr. S.D.N.Y. 2008) (No. 34)
    (the "Decision") ..............................................................................................6, 8

*Garza v. Marine Trans. Lines, Inc.*, 861 F.2d 23 (2d Cir 1988).......................................3

*International Multifoods Corp. v. Commercial Union Insurance Co.*, 309
    F.3d 76 (2d Cir. 2002)...........................................................................................3

*In re Keck, Mahin & Cate*, 241 B.R. 583 (Bankr. N.D. Ill. 1999).............................7, 8

*Parks Real Estate Purchasing Group v. St Paul Fire and Marine
    Insurance Co.*, 472 F.3d 33 (2d Cir. 2006).........................................................3

*This is Me, Inc. v. Taylor*, 157 F.3d 139 (2d Cir. 1998) ...................................................7

*World Trade Ctr. Properties, L.L.C. v. Hartford Fire Insurance Co.*, 345
    F.3d at 186, *overruled in part on other grounds*, *Wachovia Bank,
    N.A. v. Schmidt*, 546 U.S. 303 (2006) .................................................................3

### **STATE CASES**

*RM 14 FK Corp. v. Bank One Trust Co., N.A.*, 831 N.Y.S.2d 120 (N.Y.
    App. Div. 2007) ...................................................................................................2

*Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352 (N.Y. 2003)..........................6

I.   **PRELIMINARY STATEMENT**

Delta's argument in the Brief on Appeal of Appellee Delta Air Lines, Inc. ("Delta Response"),[1] if accepted, would mean that the TIA exclusion provisions apply in *every* bankruptcy case as long as a claim based on SLV is allowed and results in *any distribution, including a distribution with a value of one cent on the dollar or less*. Thus, Delta argues that the TIAs are nullities in the one context in which they are needed most: the bankruptcy of a lessee. Delta's argument completely eviscerates the fundamental purpose the TIAs serve: to provide a separate and independent claim to the Verizon OPs. In fact, one of the inherent premises contained in many of Delta's arguments is that the TIAs are not separate contracts that provide the Verizon OPs with separate and independent claims. Instead, Delta wrongly argues implicitly, and explicitly, that the TIAs cannot give rise to a separate and independent claim *at all* based on the "cosmic" argument which the Bankruptcy Court correctly overruled.

In accepting Delta's arguments nullifying the TIAs, the Bankruptcy Court violated binding Second Circuit precedent that mandated the admission of extrinsic evidence. That holding and Delta's corresponding argument are wrong because controlling Second Circuit precedent *requires* courts to consider the customs, practices, usages and terminology as generally understood in a specialized industry, not only to determine the meaning of the relevant contract language, *but to determine whether such language is ambiguous*.

II.   **DELTA SEEKS TO NULLIFY THE TIAS**

Under Delta's argument, the TIA exclusion provisions would apply to eliminate all claims under the TIAs in every bankruptcy case in which a claim based on SLV is allowed and results in any distribution, no matter how small the distribution. This cannot be the correct

---

[1]   Capitalized terms not otherwise defined herein have the same meanings as the definitions in Appellants' Opening Brief on Appeal ("Opening Brief").

interpretation of the exclusion provisions because it would completely eviscerate the fundamental purpose the TIAs serve, which is to provide a separate and independent claim to the Verizon OPs, *including in the event of a lessee bankruptcy*.

Owner participants specifically negotiate to receive separate and independent claims under TIAs and rely heavily on those protections in providing economically beneficial pricing to lessees. Absent the protection of having a direct claim against the lessee for tax and other exposure triggered by the lessee's rejection of the lease, the owner participants would not have entered into the transactions on the same terms. The size of the Verizon OP Claims, which total $80,599,599.72, underscores the critical role TIAs play in the overall economic structure of aircraft leveraged lease transactions. Now that Delta has reaped the rewards of the economically beneficial pricing, however, Delta seeks to overhaul the economic structure of the transactions by rendering the TIAs meaningless. The TIAs would be meaningless if they did not provide a separate and independent claim to the Verizon OP's in the event of a lessee bankruptcy, yet this is *exactly* the result Delta seeks to achieve. Delta's position is wholly inequitable and would render the TIAs nugatory in violation of black-letter New York law which requires that contracts should not be interpreted so as to render any clause, let alone the entire contract, meaningless. *See RM 14 FK Corp. v. Bank One Trust Co., N.A.*, 831 N.Y.S.2d 120 (N.Y. App. Div. 2007).

### III.  EXTRINSIC EVIDENCE WAS IMPROPERLY EXCLUDED

Delta argues that the Bankruptcy Court correctly refused to consider extrinsic evidence because the exclusion provisions contain no "technical, industry-specific terminology" and the TIAs are unambiguous. Delta Response, at 16-17. These arguments mischaracterize applicable Second Circuit law.

Applicable Second Circuit law imposes no requirement that a particular word be inherently technical or ambiguous. Courts have routinely found that in the context of a particular

agreement, words with seemingly obvious meanings are ambiguous. *See e.g., Garza v. Marine Trans. Lines, Inc.*, 861 F.2d 23, 28 (2d Cir 1988) (finding ambiguity in the term "loss or damage"); *Parks Real Estate Purchasing Group v. St Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 45 (2d Cir. 2006) (finding ambiguity in the term "contamination"); *Alexander & Alexander Servcs., Inc. v. Lloyd's*, 136 F.3d 82, 87 (2d Cir. 1998) (finding ambiguity in the term "client"); *In re Chateaugay Corp.*, 116 B.R. 887, 904 (Bankr. S.D.N.Y. 1990) (finding ambiguity in the term "terminated"). Thus, there is no need for any of the words in the TIA exclusion provisions to have an inherently "technical" or "arcane" meaning.

Instead, well-established Second Circuit precedent requires "courts to consider the customs, practices, usages and terminology as generally understood in the particular trade or business ***in identifying ambiguity within a contract***."[2] *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d at 186, *overruled in part on other grounds*, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), (internal quotation marks and citations omitted) (affirming district court's consideration of evidence of custom and usage to decide whether contract is ambiguous) (emphasis added); *see also Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 87 n. 4 (2d Cir. 2002) (holding that district court erred in declining to consider custom and usage evidence to determine whether an ambiguity existed). Thus, the ***first*** step the Bankruptcy Court was required to take by controlling Second Circuit precedent was to consider extrinsic evidence of the customs, practices, usages and terminology of the aircraft leveraged leasing industry ***to determine whether the relevant language was ambiguous***. In fact, this is the only result that makes sense. Without a full and complete understanding of the specialized legal

---

[2] This well-established Second Circuit precedent is likely why the bankruptcy court in the TIA litigation in the Northwest bankruptcy cases has allowed owner participants to take discovery regarding the applicable TIAs, including the exclusion provisions.

and economic context in which aircraft leveraged lease transactions occur, a layperson simply cannot interpret accurately the constituent documents of such transactions or determine whether any ambiguities exist.

The Bankruptcy Court failed to examine extrinsic evidence to determine whether an ambiguity existed or to determine the meaning of the relevant contract terms. Instead, the Bankruptcy Court ignored controlling Second Circuit precedent and committed reversible error by reaching conclusions concerning the ambiguity and meaning of the TIAs in an evidentiary vacuum, despite the highly specialized nature of aircraft leveraged lease transactions.

### IV.    DELTA'S COSMIC ARGUMENT FAILS

Delta's "overlap" or "cosmic" argument willfully ignores the fact that the TIAs represent separate and independent contracts between Delta and the Verizon OPs that give rise to separate and independent claims. Delta argues that the Verizon OP Claims should be disallowed because they are "encompassed within the SLV claims" and "a single loss gives rise to a single right to payment." Response Brief, at 22. Delta's argument does not withstand even modest analytical scrutiny. As the Bankruptcy Court noted,

> the general legal principle that precludes double liability for a single injury or loss has never been applied by any court to void separate *contract* obligations owed to different parties under different contracts. Indeed, we are not dealing with an "injury" which gives rise to any claim at all *in the absence of a contract right*.

*In re Delta Air Lines, Inc.*, 370 B.R. 552, 557 (Bankr. S.D.N.Y. 2007) (No. 9)[3] ("*Delta I*") (emphasis in original).

Delta's first response to the Bankruptcy Court's ruling relies on a case involving a ***single*** contract for the proposition that a liquidated damages clause cannot force someone to pay an

---

[3]    Items designated as the record on appeal by the Appellants are referred to herein as "No. _".

unenforceable penalty.  *See* Response Brief, at 23-24.  This response fails to support Delta's argument because the TIAs and the Lease Agreements are separate contracts, and the amounts owed under the TIAs are enforceable liquidated damages provisions negotiated by counsel.  Delta's suggestion that the Verizon OP Claims are unenforceable penalties is absurd.

Delta's second response to the Bankruptcy Court's ruling asserts that TIA and SLV obligations are not different debts owed to different parties.  *See* Response Brief, at 24.  In support of this position, Delta improperly introduces an argument - not raised in the Bankruptcy Court - that the TIA claims and SLV claims are not separate because the Internal Revenue Code treats a grantor trust and its beneficiary as a single entity for tax purposes.  *See id*.  The tax regulations themselves, however, specify that tax treatment of single-member entities is independent of their corporate separateness for all other purposes, ***such as entering into and enforcing contracts***.  *See e.g.*, Tres. Regs. §§ 301.7701-1-3 (the separateness of single-member business entities may be "disregarded" for tax purposes even though they otherwise qualify as separate legal entities under state law).

Delta's third response simply restates Delta's assertion that the Bankruptcy Court's ruling was incorrect because multiple liabilities would arise out of a single loss.  This response is completely contrary to the relevant facts and law.  TIA and SLV obligations arise under two separate contracts between two distinct sets of parties and involve two different remedies.

Consequently, none of Delta's arguments in support of the "cosmic" argument refute the Bankruptcy Court's conclusion that "Delta cannot now avoid its contractual obligations either to the owner participants for TIA or to the indenture trustee for SLV under the Lease by resort to a general rule of law which has never been applied to impair contract rights."  *Delta I*, 370 at 558.

## V.  DELTA'S ARGUMENT VIOLATES *TRAVELERS*

To argue that the Bankruptcy Court did not violate *Travelers,* Delta attempts to conflate the distinct concepts of claim allowance and claim discharge.  *See* Response Brief, at 11-13.  This argument is a tremendous red herring.  There is no dispute that if the Verizon OP Claims are allowed, they will be treated in the same way that all unsecured claims are treated under Delta's plan of reorganization.

Instead, ***the dispute is whether the Verizon OP Claims should be allowed under applicable state law as mandated by Travelers***.  Consequently, the relevant legal analysis must be based on the meaning of the TIA exclusion provisions under applicable state law.  The Bankruptcy Court, however, relied on the "bankruptcy context," not applicable state law.

> ***Suffice it to say that "in cash in full" is a reasonable interpretation of "pay/paid" in the context of ordinary course payment obligations under the Lease and even in the extraordinary SLV payment obligation in the context of a solvent airline not in bankruptcy … But the "in cash in full" interpretation conflicts with reality in the context of an insolvent airline/lessee in bankruptcy.***

*In re Delta Air Lines, Inc.*, 381 B.R. 57, 79 (Bankr. S.D.N.Y. 2008) (No. 34) (the "*Decision*") (emphasis added).  As a result, the Bankruptcy Court explicitly relied on a "bankruptcy context" rule of contract interpretation instead of relying solely on state law as required by *Travelers*.  Thus, the Bankruptcy Court's interpretation of the TIA exclusion provisions violated controlling Supreme Court precedent and constitutes reversible error.

## VI.  THE OPERATIVE DOCUMENTS REQUIRE PAYMENT IN CASH IN FULL

Delta argues that the TIA exclusion provisions do not require SLV to be paid in cash in full. Response Brief, at 9-10.  Delta's argument is flat wrong because the Operative Documents read as a whole require SLV to be paid in cash in full.  Black letter New York law requires courts to interpret contracts as a whole, giving meaning to all provisions in related contracts. *See, e.g., Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y. 2d 352 (N.Y. 2003) ("A written

contract will be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose."); *This is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998) (interrelated contracts involved in a single transaction must be interpreted as a whole, consistent with the purpose of the transaction).

The Operative Documents require that ***all amounts*** paid by Delta be paid in U.S. dollars in immediately available funds. *See* Lease Agreements, § 3(d); Tax Indemnity Agreements, § 13. Moreover, SLV is a specific dollar amount. *See* Lease Agreements, § 1. Consequently, the payment of "such" amount of SLV that is required to trigger the exclusion provisions of the TIAs ***only*** can occur if the specific dollar amount that constitutes SLV is paid in full and in cash. Delta's argument to the contrary violates fundamental New York contract law by failing to take into account all of the relevant provisions of the Operative Documents, which must be interpreted as a whole consistent with the purpose of the aircraft leveraged lease transactions.

In addition, to support the assertion that allowance and distribution on a claim in bankruptcy satisfies the TIA exclusion provisions, Delta relies on *In re Keck, Mahin & Cate*, 241 B.R. 583, 596 (Bankr. N.D. Ill. 1999) ("<u>*Keck*</u>"). *Keck*, however, does not stand for the proposition that allowance and distribution on a claim satisfies the TIA exclusion provisions. *Keck* simply held that the allowance and discharge of a self-insured retention claim, instead of the payment of such claim, did not constitute grounds for an insurer to deny coverage. *Keck* does not support Delta's argument because the contract in *Keck* provided that the insolvency of the insured could ***not*** be a basis to deny coverage. *Keck*, 241 B.R. at 598. The Operative Documents, however, provide that Delta's obligations to make payments under the Lease Agreements, which includes payments of SLV, are not affected by any circumstance, including the bankruptcy of Delta. *See* Lease Agreements, § 20. Moreover, the *Keck* court held that as a

result of its decision, the insurer's practical risk was not increased and the insurer's exposure was "not increased by a penny." *Keck*, at 596. This is completely inapposite to the instant facts in which Delta's argument would disallow the $80,599,599.72 of Verizon OP Claims and render the TIAs completely meaningless in the event of a lessee bankruptcy.

### VII.    DELTA'S OFFSET ARGUMENT FAILS

Delta argues that the calculation of SLV under the Operative Documents should take into account certain offsets. *See* Response Brief, at 18-21. Although the Verizon OPs dispute many of Delta's contentions, even if Delta's contentions regarding the offsets were correct, Delta's argument fails to identify why the relevant allowed claim amounts equal the specific dollar amounts that constitute SLV under the Operative Documents. Delta fails to identify why the allowed claim amounts equal the specific dollar amounts that constitute SLV because there is no evidence in the record to support the argument. The Bankruptcy Court's statement on the issue was simply that "[t]he Modified Term Sheet approved by this Court's February 15, 2006 order did not materially depart from the contractual provisions with respect to SLV." *Decision*, 381 B.R. at 71. A "material departure," however, is not required for a dollar amount to fail to constitute SLV. A dollar amount either is or is not the specific amount that constitutes SLV regardless of whether or not offsets are used to calculate the specific amount of SLV. Close does not count. Thus, Delta's arguments about whether certain offsets should be taken miss the dispositive fact that the record is bereft of any evidence to support a conclusion that the relevant allowed claim amounts are the specific dollar amounts that constitute Stipulated Loss Value within the meaning of the TIA exclusion provisions. Therefore, it was reversible error for the Bankruptcy Court to conclude that the TIA exclusion provisions apply because there is no evidentiary support for the conclusions that claims in the specific amount of Stipulated Loss Value were allowed and that distributions would be made on such claims.

## VIII. DELTA'S EXAMPLES DEMONSTRATE WHY DELTA IS WRONG

Delta's first example argues that if SLV equals $100, then the bankruptcy claim of the Indenture Trustee and the Verizon OPs should not exceed $100 because a bankruptcy claim may not exceed the out-of-bankruptcy right of payment. *See* Response Brief, at 13. The reasoning behind this example, however, relies on the false premise that the "cosmic" argument is correct and that the Verizon OPs do not have separate and independent claims. Once this false premise is rejected, the example fails. The Verizon OPs have separate and independent claims under separate contracts. The use of the phrase "to the extent such amounts have been paid" in the TIA exclusion provisions confirms that the Verizon OPs only agreed to waive their TIA claims if the amount that constitutes Stipulated Loss Value is paid in cash, otherwise the "to the extent" language would be meaningless. Absent a payment of this amount, whether inside or outside of bankruptcy, the TIA exclusion provisions do not apply and under applicable state law Delta is obligated to satisfy the Verizon OP Claims, which under the instant facts means allowing and making distributions on the Verizon OP Claims under Delta's plan of reorganization.

Delta's second example argues that "paid" does not mean payment in cash because the difference between "paid in cash in full" and "allowed and distributions in a bankruptcy" is more analogous to the difference between using different strokes to swim the English Channel than the difference between throwing a baseball and throwing a charitable ball. *See* Response Brief, at 15. This argument is ridiculous. In Delta's example, the swimmer, regardless of the stroke, must cross the English Channel by using his or her limbs to move through the water of the English Channel. The difference between swimming strokes may be similar to the difference between using twenty dollar bills or one dollar bills to pay an identified amount, but it is worlds apart from the complete difference between "paid in cash in full," which requires the payment in full of SLV, and "allowed and distributions in a bankruptcy," which requires only allowing a

-9-

claim and making any distribution, including a distribution with a value of one cent on the dollar or less.  Succinctly, the difference in the value transferred under "paid in cash in full" and "allowed and distributions in a bankruptcy" could exceed 99%.  Moreover, "allowed and distributions in a bankruptcy" would nullify the TIAs in the event of a lessee bankruptcy because the TIA exclusion provisions would be triggered upon *any* distribution, instead of being triggered only upon payment of SLV as required by "paid in cash in full."  Thus, "paid in cash in full" and "allowed and distributions in a bankruptcy," like throwing a baseball and throwing a charitable ball, are completely different.

## IX.   CONCLUSION

For the reasons stated herein and in the Opening Brief, the Verizon OPs respectfully request that this Court (i) reverse the Disallowance Order, direct the Bankruptcy Court to enter an order allowing the Verizon OP Claims as to liability, and remand for determination of their proper amounts, or (ii) alternatively, remand for further evidentiary proceedings and direct the Bankruptcy Court to consider extrinsic evidence.

Dated: New York, New York
       April 24, 2008

HUNTON & WILLIAMS LLP

By: */s/ Scott H. Bernstein*
Peter S. Partee
Scott H. Bernstein
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000 (telephone)
(212) 309-1100 (facsimile)
ppartee@hunton.com
sbernstein@hunton.com

Benjamin C. Ackerly
Jason W. Harbour
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200 (telephone)
(804) 788-8218 (facsimile)
backerly@hunton.com
jharbour@hunton.com

*Attorneys for Bell Atlantic Tricon Leasing Corporation,
NCC Golf Company, NCC Key Company
and NCC Charlie Company*